## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANTONIO WHITFIELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. |
| | ) | |
| CITY OF CHICAGO, | ) | |
| a Municipal Corporation, | ) | **Plaintiff requests trial by jury** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

**NOW COME** the Plaintiff, Antonio Whitfield (hereinafter referred to as "Plaintiff") by and through his attorneys, The Thollander Law Firm, Ltd., and complain against the City of Chicago, (hereafter referred to as "Defendant") as follows:

## INTRODUCTION

This is an action for sexual harassment, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Plaintiff, a former Chicago Police Officer, brings this action against the Defendant for subjecting Plaintiff to unwanted sexual advances, a hostile work environment, and a pattern of retaliatory conduct that ultimately forced Plaintiff to resign as a Chicago Police Officer after five (5) years of exemplary service.

## THE PARTIES

1. Plaintiff is a resident of the State of Illinois and at all times relevant to the matters giving rise to this litigation, previously employed by Defendant as a Chicago Police Officer, Star Number 19651. Plaintiff was assigned to the 11th District Tactical Team ("TACT") of the Chicago Police Department ("CPD").

2.     Defendant is and at all times herein has been a municipal corporation, duly organized and existing under the laws of the State of Illinois and located in the County of Cook, State of Illinois.  Defendant operates the Chicago Police Department and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

## JURISDICTION AND VENUE

3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3), as this action arises under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 and the Civil Rights Act of 1991, 42 U.S.C. §§2000e to 2000e-17; 42 U.S.C. 1981a ("Title VII").

4.     Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. 2000e-5(f)(3), because all unlawful employment practices alleged herein occurred within this judicial district and all the parties are located or reside within this district.

## ADMINISTRATIVE PREREQUISITES

5.     On or about May 5, 2025, Plaintiff filed a charge of discrimination (Charge Number 440-2025-10543) against the Defendant with the United States Equal Employment Opportunity Commission ("EEOC") and cross-filed with the Illinois Department of Human Rights charging the Defendant with sexual harassment, subjected to a hostile work environment and retaliated against for raising concern associated with the conduct of his immediate supervision, Sgt. Ashley Mason.

6.     On or about August 1, 2025, Plaintiff filed a second charge of discrimination (Charge Number 440-2025-10531) against the Defendant, charging the

2

Defendant with retaliatory conduct. This second charge was similarly cross-filed with the Illinois Department of Human Rights.

7. On February 17, 2026, the EEOC issued a right-to-sue letter to Plaintiff with respect to Charge 440-2025-10543, a true and accurate copy is attached hereto and incorporated by reference as Exhibit A.

8. On March 19, 2026, the EEOC issued a Determination with respect to Charge 440-2025-10531 finding that the evidence obtained in the investigation establishes reasonable cause to believe Defendant retaliated against Plaintiff based on engaging in protected activity by issuing negative employment references and subjecting Plaintiff to different terms and conditions of employment, including transmitting false misconduct allegations to the Illinois Law Enforcement Training and Safety Board ("ILETSB") and placing Plaintiff on a do-not-hire list thus limiting Plaintiff's employment opportunities, in violation of Title VII of the Civil Rights Act of 1964, as amended. A true and accurate copy of the EEOC's Determination is attached hereto and incorporated by reference as Exhibit B.

9. On March 30, 2026, the EEOC issued a right-to-sue letter to Plaintiff with respect to Charge 440-2025-10531, a true and accurate copy is attached hereto and incorporated by reference as Exhibit C.

10. Plaintiff has completed all administrative prerequisites to bringing this action.

3

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A. Plaintiff's Employment and Exemplary Performance

11.     From June 2022 through January 6, 2025, Plaintiff was employed as a Chicago Police Officer, assigned to TACT in the 11th District, Chicago, Illinois.

12.     At all relevant times, Plaintiff performed his duties and responsibilities in an exemplary manner, receiving consistent accolades and positive assessments from supervisors.

13.     In or around June 2024, Sgt. Ashley Mason was newly assigned to TACT and assumed direct supervisory authority over Plaintiff and other tactical officers in the 11th District.

### B. Sgt. Mason's Unwanted Sexual Advances

14.     Beginning in or about July 2024, Sgt. Mason began directing repeated, unwanted advances toward Plaintiff via text messages.  Initially, Plaintiff believed Sgt. Mason was acting in a friendly manner, but her communications quickly became pronounced, provocative, and unsettling.

15.     Sgt. Mason began sharing her cellular phone location with Plaintiff, for reasons unknown to Plaintiff and without his request.

16.     Sgt. Mason repeatedly invited Plaintiff to various personal locations, including suggesting that the two take a trip together to Colombia.  On multiple occasions, Sgt. Mason invited Plaintiff to her personal residence and shared her home address with him.  No other TACT officers were extended such invitations or provided Sgt. Mason's home address.

4

17.     Sgt. Mason's interactions with Plaintiff were frequently provocative and personal in nature.  Sgt. Mason referred to Plaintiff as "my King," and regularly sent Plaintiff photographs of alcoholic beverages accompanied by messages such as, "This is for you. lol."

18.     Plaintiff consistently declined Sgt. Mason's personal invitations and refused her advances.

**C. Favorable Performance Review Followed by Retaliatory Treatment**

19.     In July 2024, Sgt. Mason performed Plaintiff's annual performance review, rating Plaintiff as "Exceeding Expectations."  This rating was among the highest performance evaluations Plaintiff received in his five-year career with CPD.

20.     Notwithstanding this favorable evaluation, Plaintiff continued to decline Sgt. Mason's advances.  In late July 2024, a radical and abrupt change in Sgt. Mason's behavior toward Plaintiff occurred.

21.     Sgt. Mason became noticeably unprofessional and began uncharacteristically ignoring Plaintiff at work.  In August 2024, efforts commenced to remove Plaintiff from TACT, despite Plaintiff's consistent and above-average job performance.

**D. The August 29, 2024 Meeting and Plaintiff's Report of Harassment**

22.     On August 29, 2024, on Plaintiff's scheduled day off, Plaintiff was unexpectedly summoned to a meeting with Lt. Jessica Duckins, the 11th District Tactical Lieutenant.

23.     At this meeting, Lt. Duckins informed Plaintiff that Sgt. Mason had communicated negative and unfavorable assessments of Plaintiff's job performance,

including allegations that Plaintiff frequently left his duty assignment and patrol activities early, acted unprofessionally, and repeatedly failed to complete assigned tasks.

24. These allegations were false. Plaintiff had never received any verbal or written disciplinary action, was never informed of any purported performance deficiencies, and was unaware until this meeting that Sgt. Mason had raised any concerns about Plaintiff's performance. Significantly, no documentation supported any of Sgt. Mason's claims.

25. Plaintiff advised and informed Lt. Duckins of Plaintiff's recent "Exceeding Expectations" performance evaluation issued within the prior 30 days and denied the alleged deficiencies. Plaintiff further noted that if the alleged conduct had actually occurred, including leaving work early, such would constitute a serious violation, potentially resulting in Plaintiff's termination as a police officer with CPD, and that such conduct would necessarily have been documented in Plaintiff's personnel file.

26. Lt. Duckins initially proposed transferring Plaintiff to another TACT team as a resolution. Sgt. Mason, however, insisted that Plaintiff not be transferred but instead be completely removed from TACT.

27. During the August 29, 2024, meeting, Plaintiff reported Sgt. Mason's inappropriate and harassing behavior to Lt. Duckins, and expressed his concern that Plaintiff was being treated unfairly and punitively in retaliation for rejecting Sgt. Mason's advances.

28. Despite Plaintiff's identified concerns associated with Sgt. Mason's conduct, Sgt. Mason remained Plaintiff's direct supervisor. No corrective action was taken.

**E. Plaintiff's Removal from TACT and Constructive Resignation**

29.     In late December 2024, Plaintiff was informed that Sgt. Mason intended to remove Plaintiff from the TACT unit and that such removal from TACT would occur in January 2025.  No reason was provided to Plaintiff.

30.     Plaintiff reasonably concluded that his reputation and career prospects within CPD had been permanently and adversely impacted.  Removal from TACT would eliminate Plaintiff's ability to obtain favorable assignments, limit his advancement opportunities, and subject him to the continued supervisory authority of Sgt. Mason, who maintained that she had a "close relationship" with the then-Chief of Internal Affairs, Yolanda Talley, creating a reasonable fear of continued and escalating retaliation.

31.     Based upon Plaintiff's belief that his reputation and career prospects within CPD had been permanently and adversely impacted, Plaintiff resigned from the Chicago Police Department on January 6, 2025, after five years of service, and secured employment as a sworn police officer with a suburban police department.

**F. Post-Resignation Retaliatory Reports to ILETSB**

32.     Following Plaintiff's resignation and his filing of EEOC Charge No. 440-2025-10543 on May 5, 2025, Defendants engaged in further and ongoing retaliation against Plaintiff.

33.     On January 30, 2025, after Plaintiff had already resigned and accepted employment with a suburban police department, Defendant, through its Police Department, filed a false professional conduct report with ILETSB.  At the time of Plaintiff's resignation on January 6, 2025, there were no allegations that Plaintiff violated any CPD policies.

34. Plaintiff learned of the false ILETSB report for the first time on or about January 21, 2026. The January 30, 2025 ILETSB report alleged six violations, including: (1) striking a Willie Miggins with a CPD vehicle; (2) driving without due regard for the safety of all persons; (3) failing to timely activate body-worn camera; (4) failing to complete an investigatory stop report; (5) failing to provide an ISR receipt; and (6) failing to activate body-worn camera.

35. In a letter dated December 27, 2024, CPD did not concur with all of the recommended sustained findings. Specifically, CPD deemed the finding regarding striking Willie Miggins to be "unfounded." Allegations 2, 3, 4, 5, and 6 were never final, remaining under advocate review with a status of non-concurrence pending. No final determination was ever made that would result in a suspension of at least ten (10) days.

36. Because none of the reports resulted in a final determination warranting a suspension of at least ten (10) days, CPD's filing of these professional conduct reports with ILETSB violated Section 9.2 of the Illinois Police Training Act, 50 ILCS 705/1, et seq.

37. After Plaintiff filed EEOC Charge No. 440-2025-10531 on August 5, 2025, CPD filed at least two (2) additional false professional conduct reports with ILETSB. Plaintiff remained unaware of these additional reports until January 2026.

38. The second ILETSB professional conduct report was submitted by Denise Hampton, Administrative Service Officer II. A third professional conduct report, filed by Lt. Cynthia Curry, appears to supersede or amend the second professional conduct report, alleging unprofessional, unethical, deceptive, or deleterious conduct, while omitting that

the striking allegation had been deemed unfounded by CPD and that remaining allegations were not final.

39.     None of the CPD professional conduct reports were final. Plaintiff's CPD personnel file, previously produced by CPD during the course of Charge 440-2025-10543, contains no records identifying, suggesting, or otherwise supporting any of the claims set forth in CPD's ILETSB professional conduct reports. The professional conduct reports are inconsistent, misleading, and a distortion of any actual infraction of CPD policy.

40.     In addition to the filing of these false ILETSB professional conduct reports, Defendant placed Plaintiff on a do-not-hire list, limiting his employment opportunities as a law enforcement officer, and were issued in direct retaliation for Plaintiff's protected activity, namely, his complaints of sexual harassment to Lt. Duckins on August 29, 2024, and his filing of EEOC Charges.

41.     On March 19, 2026, EEOC District Director Amrith Kaur Aakre issued a final Determination in Charge No. 440-2025-10531 (attached hereto as Exhibit B and incorporated by reference). The Determination found that the evidence obtained during the EEOC's investigation "establishes reasonable cause to believe Respondent retaliated against Charging Party based on engaging in protected activity by issuing negative employment references and subjecting Charging Party to different terms and conditions of employment, including transmitting false misconduct allegations to ILETSB and placing Charging Party on a do-not-hire list thus limiting Charging Party's employment opportunities, in violation of Title VII of the Civil Rights Act of 1964, as amended." The EEOC's Determination is final.

9

## COUNT I – SEXUAL HARASSMENT
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2

1-41. Plaintiff realleges and restates paragraphs 1-41 above as paragraphs 1-41 of Count I as if fully set forth herein.

42. Sgt. Mason, as Plaintiff's direct supervisor, subjected Plaintiff to unwanted sexual advances beginning in or about July 2024, including personal text messages, invitations to her residence, sharing her home address, suggesting international travel together, and addressing Plaintiff as "my King."

43. Plaintiff's rejection of Sgt. Mason's sexual advances was a substantial motivating factor in Sgt. Mason's decision to make false and negative performance allegations against Plaintiff, to seek Plaintiff's removal from TACT, and to take other adverse employment actions described herein.

44. Defendant is strictly liable for Sgt. Mason's advances and harassment as Sgt. Mason was acting as Plaintiff's direct supervisor and the adverse employment actions arose from the supervisory relationship.

45. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer damages, including loss of employment, loss of income, loss of career advancement opportunities, damage to professional reputation, and emotional distress.

46. Plaintiff requests a trial by jury.

## COUNT II – HOSTILE WORK ENVIRONMENT
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2

1-46. Plaintiff realleges and restates paragraphs 1-46 of Count I as paragraphs 1-46 of Count II as if fully set forth herein.

10

47. Sgt. Mason's persistent and unwanted sexual advances, personal communications, invitations, and behavior toward Plaintiff constituted harassment based on sex.

48. The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create a hostile and abusive work environment. The harassment was objectively and subjectively hostile.

49. Defendant knew or should have known of the hostile work environment. Plaintiff reported Sgt. Mason's harassment to Lt. Duckins on August 29, 2024. Despite the foregoing, Defendant failed to take prompt and appropriate corrective action, instead leaving Sgt. Mason as Plaintiff's direct supervisor and permitting the retaliatory conduct to continue.

50. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages including loss of income, loss of career opportunities, reputational harm, and severe emotional distress.

51. Plaintiff requests a trial by jury.

### COUNT III – RETALIATION (Removal from TACT)
### Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3

1-51. Plaintiff realleges and restates paragraphs 1-51 of Count II as paragraphs 1-51 of Count III as if fully set forth herein.

52. Plaintiff engaged in protected activity under Title VII when he rejected Sgt. Mason's sexual advances and when he reported Sgt. Mason's harassment and his concern about retaliatory treatment to Lt. Duckins on August 29, 2024.

53. Following Plaintiff's protected activity, Defendants, through Sgt. Mason and Lt. Duckins, took materially adverse employment actions against Plaintiff, including:

11

(a) making false negative performance allegations to Lt. Duckins with no documentary support; (b) seeking and effectuating Plaintiff's removal from the TACT unit; and (c) essentially constructively discharged Plaintiff.

54. A causal nexus exists between Plaintiff's protected activity and the adverse actions taken against Plaintiff. The temporal proximity between Plaintiff's rejection of Sgt. Mason's advances and the subsequent negative performance allegations and removal efforts, combined with the pretextual nature of the proffered reasons, establishes retaliation.

55. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered damages including constructive discharge, loss of employment and income, loss of career advancement, reputational harm, and emotional distress.

56. Plaintiff requests a trial by jury.

### COUNT IV – RETALIATION (False ILETSB Professional Conduct Reports) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3

1-56. Plaintiff realleges and restates paragraphs 1-56 of Count III as paragraphs 1-56 of Count IV as if fully set forth herein.

57. Plaintiff engaged in further protected activity when he filed EEOC Charge No. 440-2025-10543 on May 5, 2025, and EEOC Charge No. 440-2025-10531 on August 1, 2025.

58. In direct response to Plaintiff's EEOC filings, Defendant caused false and non-final professional conduct reports to be filed with ILETSB on or after January 30, 2025, well after Plaintiff's resignation and in violation of the Illinois Police Training Act. These filings effectively transmitted negative employment references regarding Plaintiff to ILETSB, materially limiting Plaintiff's employment opportunities in law enforcement.

12

59.     The EEOC issued a final Determination dated March 19, 2026 (Exhibit B), finding reasonable cause to believe that Defendant retaliated against Plaintiff in violation of Title VII by issuing negative employment references, transmitting false misconduct allegations to ILETSB, and placing Plaintiff on a do-not-hire list.

60.     The filing of these false ILETSB reports, after Plaintiff's resignation and as a direct response to his protected EEOC charges, constitutes unlawful retaliation under Title VII.

61.     As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered ongoing damages including harm to his professional reputation, impairment of his law enforcement career prospects, loss of income and benefits, and emotional distress.

### COUNT V – RETALIATION (Do-not-hire, Ineligible for Rehire Designation) Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3

1-61.     Plaintiff realleges and restates paragraphs 1-61 of Count IV as paragraphs 1-61 of Count V as if fully set forth herein.

62.     Plaintiff engaged in further protected activity when he filed EEOC Charge No. 440-2025-10543 on May 5, 2025, and EEOC Charge No. 440-2025-10531 on August 1, 2025.

63.     In direct response to Plaintiff's EEOC filings, on or about February 18, 2026, Defendant caused Plaintiff to be placed on a "do-not-hire list" resulting in Plaintiff being ineligible for rehire by Defendant, and in particular, CPD. A true and accurate copy of the Ineligibility for Rehire designation is attached hereto and incorporated by reference as Exhibit D. The placing of Plaintiff on a "do-not-hire list" and designating

13

Plaintiff as being Ineligible for Rehire materially limits Plaintiff's future and possible employment opportunities with the Defendant and other law enforcement agencies.

64. The placing of Plaintiff on a "do-not-hire list" and designating Plaintiff as being Ineligible for Rehire was a direct response to Plaintiff's protected EEOC charges, constitutes unlawful retaliation under Title VII.

65. As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered ongoing damages including harm to his professional reputation, impairment of his law enforcement career prospects, loss of income and benefits, and emotional distress.

66. Plaintiff requests a trial by jury.

**WHEREFORE**, the Plaintiff, Antonio Whitfield, respectfully requests that this Honorable Court enter judgment against Defendant, City of Chicago, and award Plaintiff the following relief:

A. Issue a permanent injunction prohibiting Defendant from discriminating against Plaintiff and that Defendant's Police Department apply all actions, policies, practices, procedures, disciplinary actions, promotions, duty selections, and duty assignments are to be in compliance with all anti-discriminatory laws.

B. Enter an Order directing and ordering Defendant to withdraw the previously filed professional conduct reports Defendant filed with ILETSB.

C. Enter an Order directing Defendant to withdraw and remove from Plaintiff's employment record with the Defendant and Defendant's Police Department, Plaintiff's Ineligibility for Rehire designation.

14

D.     Award Plaintiff front and back pay, fringe benefits, health insurance benefits, pension credits and social security credits Plaintiff would have earned but for the unlawful discriminatory acts of Defendant and other make-whole relief, including, but not limited to prejudgment interest and liquidated damages;

E.     Enter an order enjoining Defendant from engaging in further unlawful discrimination;

F.     Award Plaintiff attorney's fees, costs and expenses of this action; and

G.     Such other relief as this Court deems just and proper.

*Respectfully submitted,*

Antonio Whitfield

By: /s/ David C. Thollander
One of his attorneys

The Thollander Law Firm, Ltd.
450 E. 22nd Street
Suite 213
Lombard, IL 60148
(630) 971 - 9195 voice
(630) 971 – 9240 facsimile
A.R.D.C. No.: 6202012
E-Mail: davidthollander@thollanderlaw.com

15



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/17/2026

**To:** Mr. Antonio T. Whitfield
40 East 9th Unit 316
Chicago, IL 60605
Charge No: 440-2025-10543

EEOC Representative and email:     JANA DIAMOND
INVESTIGATOR
JANA.DIAMOND@EEOC.GOV

---

## DETERMINATION AND NOTICE OF RIGHTS

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2025-10543.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
02/17/2026

Amrith Kaur Aakre
District Director



Cc:
NA NA
3150 South Michigan Ave.
Chicago, IL 60653

Maria Vuolo-Milan
City of Chicago, Department of Law   Labor Division
2 North LaSalle Street Suite 660
Chicago, IL 60602

David C Thollander
The Thollander Law Firm, LTD
450 E. 22nd Street Suite 213
Lombard, IL 60148


Please retain this Notice for your records.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

JCK Federal Building
230 South Dearborn Street, Suite 1866
Chicago, IL 60604

CHARGE NUMBER: 440-2025-10531

Antonio Whitfield                                                        Charging Party
40 East 9th, Unit 316
Chicago, IL 60605

v

City of Chicago, Chicago Polic Department                   Respondent
3150 South Michigan Ave
Chicago, IL 60653

## DETERMINATION

Under the authority vested in me by the U.S. Equal Employment Opportunity Commission's ("Commission") Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended (Title VII).

Respondent is an employer within the meaning of Title VII, and all requirements for coverage have been met.

Charging Party alleges that Respondent retaliated against him based on his previous Commission charge in that, Respondent issued new and allegedly false misconduct accusations after his original Commission filing, which resulted in unfavorable references or reputational harm intended to affect his subsequent employment, in violation of Title VII.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe Respondent retaliated against Charging Party based on engaging in protected activity by issuing negative employment references and subjecting Charging Party to different terms and conditions of employment, including transmitting false misconduct allegations to ILETSB and placing Charging Party on a do-not-hire list thus limiting Charging Party's employment opportunities, in violation of Title VII of the Civil Rights Act of 1964, as amended.

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate the alleged unlawful practices by informal methods of conciliation. Therefore, I invite the parties to join with the Commission in reaching a just resolution of this matter. Anything said or done during the conciliation process will be kept confidential by the Commission and, subject to limited exceptions set out in the Commission's Procedural Regulations (29 CFR Part 1601.26), may not be used by participants in a subsequent proceeding, including litigation on this charge, without the consent of all parties.

If Respondent wishes to accept this invitation to participate in conciliation efforts, please notify J'Ana Diamond at jana.diamond@eeoc.gov or 312-872-9667 within 10 days. Respondent is



EXHIBIT
B

1

**Page 2**
440-2025-10531

encouraged to include proposed terms for a conciliation agreement. The remedies for violations of the statutes we enforce are designed to make the identified victims whole and to provide corrective and preventative relief. These remedies may include, as appropriate, an agreement by Respondent not to engage in unlawful employment practices, placement of identified victims in positions they would have held but for discriminatory actions, back pay, restoration of lost benefits, injunctive relief, compensatory and/or punitive damages, and notice to employees of the violation(s) and the resolution of the claim.

Should Respondent have further questions regarding the conciliation process, or the conciliation terms it would like to propose, please contact the investigator identified above. Should there be no response from Respondent within 10 days, we may conclude that further conciliation efforts in this matter would be futile or non-productive.

On behalf of the Commission:

Amrith Kaur Aakre
Digitally signed by Amrith Kaur Aakre
Date: 2026.03.19 11:39:08 -05'00'

_3/19/26_____
_Date

Amrith Kaur Aakre
District Director



# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**Chicago District Office**
230 S Dearborn Street
Chicago, IL 60604
(800) 669-4000
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (CONCILIATION FAILURE)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 03/30/2026

**To:** Mr. Antonio T. Whitfield
40 East 9th Unit 316
Chicago, IL 60605
Charge No: 440-2025-10531

EEOC Representative and email:     JANA DIAMOND
INVESTIGATOR
JANA.DIAMOND@EEOC.GOV

## NOTICE OF RIGHT TO SUE (CONCILIATION FAILURE)

To the person aggrieved: This notice concludes the EEOC s processing of the above-numbered charge. The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge but could not obtain a settlement with the Respondent that would provide relief for you. In addition, the EEOC has decided that it will not bring suit against the Respondent at this time based on this charge and will close its file in this case. This does not mean that the EEOC is certifying that the Respondent is in compliance with the law, or that the EEOC will not sue the Respondent later or intervene later in your lawsuit if you decide to sue on your own behalf.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 440-2025-10531.

On behalf of the Commission,

Digitally Signed By:Amrith Kaur Aakre
03/30/2026
Amrith Kaur Aakre
District Director



**Cc:**
Beatriz E Matias
City of Chicago-Department of Law
2 North LaSalle Street Suit 600
Chicago, IL 60602

NA NA
3150 South Michigan Ave.
Chicago, IL 60653

Maria C Vuolo-Milan
City of Chicago, Department of Law   Labor Division
2 North LaSalle Street Suite 660
Chicago, IL 60602

David C Thollander
The Thollander Law Firm, LTD
450 E. 22nd Street Suite 213
Lombard, IL 60148


Please retain this Notice for your records.

## DEPARTMENT OF HUMAN RESOURCES

### CITY OF CHICAGO

February 18, 2026

Antonio Whitfield
40 E 9th St Apt 316
Chicago, IL 60605
awhitfield163@gmail.com

Dear Mr. Whitfield,

We have reviewed the circumstances behind your file from the City of Chicago and your appeal to be removed from the Ineligible for Rehire designation from your employment record.

Thus, we have determined that the Ineligible for Rehire designation should not be removed from your employee file.

Sincerely,

Sandra Blakemore
Commissioner
Department of Human Resources



121 NORTH LASALLE STREET, ROOM 1100, CHICAGO, ILLINOIS 60602